**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-22043-ALTMAN**

**SASHA JOHNSON**, *individually, and*
*on behalf of all others similarly situated*,

    *Plaintiffs*,

v.

**WEBHELP AMERICAS LLC**,

    *Defendant*.

_____/

**ORDER**

Our Plaintiff—Sasha Johnson—has brought this collective and class action under the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA") against our Defendant—Webhelp Americas LLC. *See* Amended Complaint ("AC") [ECF No. 15] ¶ 1. The Amended Complaint alleges that the "Defendant required its Agents to begin work prior to their scheduled shifts by performing compensable, off-the-clock work that was integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones." *Id.* ¶ 4. "The Agents only 'clocked in' and received compensation *after* this preliminary work was completed," even though, the Amended Complaint says, "they were required to perform this work in order to be 'phone ready' when their scheduled shifts began." *Ibid.* The Plaintiff has sued on behalf of herself and "[a]ll current and former hourly call center agents who worked for [the] Defendant at any time during the past three years." *Id.* ¶ 11. The Plaintiff now "seek[s] conditional certification of [her] FLSA claims[.]" Motion for Conditional Class Certification (the "Motion") [ECF No. 49] at 2. Having carefully examined the briefs and the record—and for the reasons we outline below—we now **DENY** the Motion for Conditional Class Certification.

**BACKGROUND**

The Plaintiff "worked [remotely] for [the] Defendant as an Agent from approximately November 2021 until May 2022." AC ¶ 23; *see also* Declaration of Named Plaintiff Sasha Johnson ("Pl. Decl.") [ECF No. 49-1] ¶ 1 ("I am a Greensboro, North Carolina resident and worked remotely for Webhelp America, LLC ('Webhelp') as an hourly call center agent ('Agent') from November 2021 until May 2022."). According to the Plaintiff, the "Defendant used its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they could be 'phone ready' at the start of their shifts." AC ¶ 50. "Upon arriving to their home computer," the Plaintiff alleges, she and other Agents "were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform their work." *Id.* ¶ 51. "The pre-shift boot-up and login process[,]" according to the Plaintiff, "took substantial time on a daily basis, ranging from twelve (12) to fifteen (15) minutes per shift, or more, depending on how fast/slow the computers and programs were operating." *Id.* ¶ 53. But the Plaintiff says that the "Agents were not compensated for all of this work because [the] Defendant prohibited Agents from clocking into its timekeeping software before the start of their scheduled shifts." *Id.* ¶ 61.

On May 29, 2024, the Plaintiff filed this case, asserting violations of the FLSA and NCWHA. *See generally* First Complaint [ECF No. 1]. On June 11, 2024, the Plaintiff filed what we'll call the Stricken Amended Complaint [ECF No. 11]. Just a few hours later, however, the Clerk informed the Plaintiff that her "filing is a violation of Section 3J(1) of CM/ECF Admin Procedures and LR 5.1(b)" and that the Plaintiff "must File a Notice of Striking, then refile document pursuant to CM/ECF Admin Procedures and Local Rules." Clerk's Paperless Notice to Filer [ECF No. 13]. So, that same day, the Plaintiff struck her own Stricken Amended Complaint (hence the name), *see* Notice of Striking [ECF No. 14], and filed her now-operative Amended Complaint, asserting *both* a collective action

under § 216(b) of the FLSA, *see* AC ¶¶ 90–103, *and* a class action under Federal Rule 23(b), *see id.* ¶¶ 104–21.

Since the Amended Complaint was filed, four other individuals have joined the action as "opt-in" plaintiffs (the "Opt-In Plaintiff(s)"). *See* Opt-In Notice of Mellissia Giles Hunt ("Hunt Notice") [ECF No. 43]; Opt-In Notice of Rhonda Mallory ("Mallory Notice") [ECF No. 54]; Dylan Quinn Opt-In Notice ("Quinn Notice") [ECF No. 62]; Keondria Strong Opt-In Notice ("Strong Notice") [ECF No. 65]. Each Opt-In Plaintiff signed an identical Consent to Join (the "Consent to Join(s)"). *See* Mellissia Giles Hunt Consent to Join ("Hunt Consent to Join") [ECF No. 43-1]; Rhonda Mallory Consent to Join ("Mallory Consent to Join") [ECF No. 54-1]; Dylan Quin Consent to Join ("Quinn Consent to Join") [ECF No. 62-1]; Keondria Strong Consent to Join ("Strong Consent to Join") [ECF No. 65-1]. No Opt-In Plaintiff submitted *either* an affidavit *or* a declaration. *See generally* Docket.

On March 28, 2025, the Plaintiff[1] moved for conditional class certification of the alleged class under § 216(b) of the FLSA. *See generally* Mot. The Plaintiff "seek[s] conditional certification of [her] FLSA claims on behalf of the following employee collective: *All current and former hourly call center agents who worked for Defendant at any time during the past three years* (the 'FLSA Collective')." *Id.* at 2. The crux of the Plaintiff's allegations is that the "Defendant willfully violated the FLSA by knowingly suffering or permitting [the] Plaintiffs to perform unpaid work before, during, and after their scheduled shifts, and failing to pay these employees the federally mandated overtime compensation." *Ibid.* The Defendant opposes the Motion, *see* Resp. [ECF No. 55], and the Plaintiff has replied, *see* Reply [ECF No. 61].

---

[1] When the Motion was filed, the Plaintiffs included Johnson and Opt-In Plaintiff Hunt. As of this writing, though, the Plaintiffs include Johnson and the *four* Opt-In Plaintiffs. Because Johnson originally sued as a singular named Plaintiff, we'll refer to the person bringing this action as the Plaintiff (singular).

3

## THE LAW

"The FLSA authorizes collective actions against employers accused of violating the FLSA." *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Section 216(b) provides that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The key to an FLSA collective action is that participants "must affirmatively opt into the suit." *Morgan*, 551 F.3d at 1258–59 (citing § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.")). "That is, once a plaintiff files a complaint against an employer, any other similarly situated employees who want to join must affirmatively consent to be a party and file written consent with the court." *Id.* at 1259; *see also LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288–89 (5th Cir. 1975) (recognizing this "fundamental" difference between Rule 23 class actions and § 216(b) collective actions).[2] "Because similarly situated employees must affirmatively opt-in to the lawsuit, the decision to certify the action, on its own, does not create a class of plaintiffs." *Morgan*, 551 F.3d at 1259.

"While not requiring a rigid process for determining similarity," the Eleventh Circuit has "sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase." *Id.* at 1260. "The first step of whether a collective action should be certified is the notice stage." *Ibid.* (first citing *Anderson v. Cagle's Inc.*, 488 F.3d 945, 952–53 (11th Cir. 2007); and then citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). "Here, a district court

---

[2] "In a Rule 23 class action," by contrast, "each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) (citing FED. R. CIV. P. 23(c)(3)).

4

determines whether other similarly situated employees should be notified." *Ibid.* "This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial." *Id.* at 1261; *see also Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1014 (11th Cir. 2007) (discussing *Hipp*'s first stage as "conditionally certifying the collective action").

At this first stage, "the district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567–68 (11th Cir. 1991). The "plaintiff has the burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260 (quoting *Anderson*, 488 F.3d at 952). The Eleventh Circuit has "described the standard for determining similarity, at this initial stage, as 'not particularly stringent,' 'fairly lenient,' 'flexible,' 'not heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'" *Id.* at 1260–61 (first quoting *Hipp*, 252 F.3d at 1214; then quoting *id.* at 1218; then quoting *id.* at 1219; then quoting *Grayson v. K Mart*, 79 F.3d 1086, 1097 (11th Cir. 1996); and then quoting *id.* at 1096). "The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion." *Id.* at 1261.

"Second, after a plaintiff satisfies its initial burden to demonstrate the existence of similarly situated employees, an employer may move for decertification." *Williams v. Imperial Hosp. Grp., Inc.*, 2010 WL 3943590, at *2 (S.D. Fla. Oct. 6, 2010) (Cohn, J.) (citing *Morgan*, 551 F.3d at 1261). "At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity." *Morgan*, 551 F.3d at 1261. "This second stage is less lenient, and the plaintiff bears a heavier burden." *Ibid.*

## ANALYSIS

The Plaintiff is now at the first (or notice) stage of collective-action certification, "also referred to as conditional certification[.]" *Morgan*, 551 F.3d at 1261. At this stage, as we've said, we must determine whether the Plaintiff has "identif[ied] similarly situated employees who wish to opt into a lawsuit before [we] may conditionally certify a class." *Vertilus v. Anglin's Beach Cafe, LLC*, 2019 WL 4753622, at *2 (S.D. Fla. Aug. 29, 2019) (Altman, J.). For the reasons we outline below, the Plaintiff has failed to meet that burden.

"The key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Morgan*, 551 F.3d at 1259. "The FLSA itself does not define how similar the employees must be before the case may proceed as a collective action." *Ibid.* And the Eleventh Circuit has "not adopted a precise definition of the term." *Ibid.* "In the absence of clear Circuit guidance after *Morgan*, district courts in this Circuit have adopted various tests to analyze whether employees are similarly situated." *Lioces v. AG-Pro, LLC*, 2025 WL 2982063, at *3 (M.D. Ga. Oct. 22, 2025) (Sands, J.); *see also* Kristin M. Stastny, *Eleventh Circuit Treatment of Certification of Collective Actions Under the Fair Labor Standards Act: A Remedial Statute Without A Remedy?*, 62 U. Miami L. Rev. 1191, 1227 (2008) ("[D]istrict courts, left with little direction from the Eleventh Circuit, have failed to state any uniform expression of factors relevant to the 'similarly situated' inquiry."). Courts in our District "have adopted a five-factor test to aid in determining whether plaintiffs are similarly situated[.]" *Martin v. HCA-IT&S Field Operations, Inc.*, 2023 WL 11916702, at *2 (S.D. Fla. Feb. 13, 2023) (Huck, J.). We'll follow suit and consider those same five factors (as we've done in other, prior cases): "(1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; and (5) the extent to which the actions which

constitute the violations claimed by [the] plaintiffs are similar." *Vertilus*, 2019 WL 4753622, at *2 (citing *Echevarria v. Las Vegas Beach, Inc.*, 2010 WL 2179747, at *2 (S.D. Fla. June 1, 2010) (Huck, J.) (observing that, "[w]hile the statute does not define 'similarly situated,' courts have filled this gap by identifying the following [five] factors relevant to such a determination")).³ "No single factor is dispositive," *Barnes v. Aventura Finest Carwash*, 2015 WL 11201213, at *2 (S.D. Fla. Aug. 5, 2015) (Moore, C.J.) (citing *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 677 (S.D. Fla. 2013) (Rosenbaum, J.)), and "[t]he decision to create an opt-in collective action remains 'soundly within the discretion of the district court,'" *ibid.* (quoting *Hipp*, 252 F.3d at 1216).

The Plaintiff insists that she "has met her 'fairly lenient' burden of providing a 'reasonable basis' that she and other Agents are similarly situated [because the] Defendant uniformly failed to pay them for all hours worked." Mot. at 11. "The declaration and pleadings[,]" the Plaintiff argues, "establish that [the] Defendant employed uniform and companywide pay practices for its hourly Agents and illustrate that [the] Defendant violated the law by refusing to pay its hourly Agents for all pre-, mid-, and post-shift work." *Ibid.* In the Plaintiff's view:

> [Her] declaration [ ] illustrates that [the] Defendants' Agents: (1) were all paid an hourly rate; (2) regularly worked 40 hours in a workweek; (3) were trained to start up/log into/open various computer and software programs, servers, and applications prior to clocking in; (4) were trained to shut down these computer programs and applications post-clocking out; and (5) were not paid for their time spent completing these tasks.

*Ibid.* (first citing Pl. Decl. ¶ 1; then citing Stricken Amended Complaint ¶¶ 31–34; then citing Pl. Decl. ¶¶ 5–7; then citing Stricken Amended Complaint ¶¶ 49–73; then citing Pl. Dec. ¶¶ 15–16, 19, 22; and then citing Stricken Amended Complaint ¶¶ 49–73).

---

³ Courts in our District frequently apply these same factors. *See Echevarria*, 2010 WL 2179747, at *2; *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 677 (S.D. Fla. 2013) (Rosenbaum, J.); *Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (King, J.); *Stone v. First Union Corp.*, 203 F.R.D. 532 (S.D. Fla. 2001) (Gold, J.); *Barnes*, 2015 WL 11201213, at *2.

In support of all this, the Plaintiff relies principally on the Stricken Amended Complaint—and not her *operative* Amended Complaint.[4] But "[a] pleading which has been stricken by the Court is to be considered as if it had never been filed." *Swift Spinning, Inc. v. Mercados Internacionales, S.A.*, 2008 WL 11417687, at *4 (S.D. Fla. Mar. 6, 2008) (Gold, J.) (citing *Williams v. Am. Tel. & Tel. Co.*, 134 F.R.D. 302, 303 (M.D. Fla. 1991) (Snyder, Mag. J.)); *see also* 71 C.J.S. Pleading § 773 (2021) ("[A]fter a pleading has been stricken, it ceases to be a part of the record and is to be considered as though it had never been filed."). So, while "at the initial stage the district court's decision to certify a class is based primarily on pleadings and affidavits[,]" *Anderson*, 488 F.3d at 953, we cannot consider the Stricken Amended Complaint because it isn't part of our record, *see His House Recovery Residence, Inc. v. Cobb Cnty., Ga.*, 2019 WL 11343462, at *4 (N.D. Ga. Mar. 27, 2019) (Jones, J.) (holding that the court "cannot consider evidence (exhibits, affidavits, or declarations) not entered on the docket"), *aff'd*, 806 F. App'x 780 (11th Cir. 2020); *Affiliated FM Ins. Co. v. Dependable Warehousing & Dist., Inc.*, 303 F. Supp. 3d 1329, 1333 n.1 (S.D. Fla. 2018) (Moreno, J.) ("However, that evidence is not a part of the record and thus, the Court will not take it into account." (citing *Wilson v. Doss*, 552 F. App'x 970, 971 (11th Cir. 2014) ("In considering the motion for summary judgment, the relevant inquiry is whether the movant is entitled to judgment as a matter of law, based on the record evidence and the inferences therefrom."))); *United States v. Groover*, 2021 WL 3205719, at *3 (11th Cir. July 29, 2021) ("Generally, we do not consider evidence not in the record."). We could deny the Motion on this basis alone because the Plaintiff fails to cite *any* pleadings that would entitle her to relief. *See Bule v. Garda CL Se., Inc.*, 2014 WL 3501546, at *4 (S.D. Fla. July 14, 2014) (Moreno, J.) (denying conditional collective certification where "[t]he Complaint contains no factual basis by which to assess whether [the] Plaintiff

---

[4] Recall that the Plaintiff struck her own Stricken Amended Complaint on June 11, 2024, *see* Notice of Striking, because it constituted "a violation of Section 3J(1) of CM/ECF Admin Procedures and LR 5.1(b)," Clerk's Paperless Notice to Filer.

and the other employees are similarly situated"). But here's the thing: Even if the Plaintiff *had* cited her operative Amended Complaint, we'd *still* deny the Motion on its merits.

In its Response, the Defendant argues that the "Plaintiff, who worked in North Carolina, ask[s] this Court to conditionally certify a collective class of nearly 2237 Agents across 38 states . . . based solely on her own declaration in which she simply states that from 'multiple conversations with other Agents' she 'know(s) that **all** of WebHelp's Agents were subject to similar pay practices and policies.'" Resp. at 10 (quoting Pl. Decl. ¶ 24) (emphasis in original). "Such a self-serving declaration," the Defendant continues, "which fails to identify the Agents and their locations, is insufficient to warrant conditional certification." *Ibid.* We agree with the Defendant.

Our "determination that the evidence shows a particular group of opt-in plaintiffs are similarly situated is a finding of fact." *Morgan*, 551 F.3d at 1260. And the Eleventh Circuit has made clear that "[t]he plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." *Grayson*, 79 F.3d at 1097. "The plaintiff[ ] may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits[.]" *Hipp*, 252 F.3d at 1219; *see also Blake v. Batmasian*, 197 F. Supp. 3d 1367, 1371 (S.D. Fla. 2016) (Marra, J.) ("To meet this burden, a plaintiff may not rest on mere allegations but must, through affidavit or other sworn testimony, establish that the putative 'opt-in' employees are 'similarly situated' to him in their job descriptions and claims alleged."); *Alvarez v. Sun Commodities, Inc.*, 2012 WL 2344577, at *4 (S.D. Fla. June 20, 2012) (Cohn, J.) ("[A] plaintiff cannot rely on speculative, vague, or conclusory allegations," but must support her case with "detailed allegations supported by affidavits").

The problem here is that our Plaintiff's *only* evidence for the supposed similarity of the Opt-in Plaintiffs' claims is her own declaration, in which she attests that she "worked remotely for [the Defendant] as an hourly call center agent . . . from November 2021 until May 2022." Pl. Decl. ¶ 1. In

9

that role, Johnson says, she was "trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs in order to access the necessary information to perform our work." *Id.* ¶ 8. This "resulted in [her] working off-the-clock for at least 12 to 15 minutes (or more) before each shift for which [she] was never compensated." *Id.* ¶ 12. Johnson's statements all track the Amended Complaint (which the Motion doesn't cite). But, for conditional class certification, the Plaintiff must show that there were "similarly situated employees who wish to opt into [the] lawsuit[.]" *Vertilus*, 2019 WL 4753622, at *2. And she hasn't done that.

In describing this class of "similarly situated" employees, Johnson says only this in her declaration:

> I have had multiple conversations with other Agents about Webhelp's compensation policies, including those described above, and its failure to pay Agents for all work performed. From those conversations, I know that ***all*** of Webhelp's Agents were subject to similar pay practices and policies.

Pl. Decl. ¶ 24 (emphasis in original). This wholly conclusory assertion—which is based on inadmissible hearsay, *see* FED. R. EVID. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted")—is all the Plaintiff has adduced for the purported similarity of this class.[5] We

---

[5] "District courts may disregard statements that are not based on personal knowledge or are inadequately supported." *Atl. Specialty Ins. Co. v. Digit Dirt Worx, Inc.*, 793 F. App'x 896, 902 (11th Cir. 2019); *see also Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999) ("Affidavits must be based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence."). Here, the Plaintiff asks us to certify a *nationwide* class based on her speculation that "***all*** of Webhelp's Agents were subject to similar pay practices and policies." Pl. Decl. ¶ 24. This we won't do. *See Rodgers v. CVS Pharm., Inc.*, 2006 WL 752831, at *16–21 (M.D. Fla. Mar. 22, 2006) (Whittemore, J.) ("A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class."); *Rascon v. Ford Midway Mall, Inc.*, 2010 WL 11504357, at *2 (S.D. Fla. May 27, 2010) (Graham, J.) ("Based on the affidavits, the Plaintiffs' conclusory assertion[ ] regarding this issue in their Motion, without more, is insufficient to justify certification of a collective action."); *Pickering v. Lorillard Tobacco Co.*, 2012 WL 314691, at *11 (M.D. Ala. Jan. 30, 2012) (Watkins, C.J.) (denying conditional class certification because the plaintiff's declaration only showed his "belief that other sales representatives in his division also were 'spending

won't allow a Plaintiff to satisfy its evidentiary burden by saying, essentially, "I've spoken to them and, trust me, they're all similarly situated to me." And we find it noteworthy that *none* of the Opt-In Plaintiffs has backed her up in that assertion. *None* of them filed affidavits or declarations—and *none* allege *either* that they fall within the FLSA's definition of collective actions *or* that they're "similarly situated" to Johnson. Instead, each Opt-In Plaintiff filed an identical "Notice of Consent," saying only the following:

   1. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in this lawsuit.

   2. I worked for Defendant(s) as an hourly employee and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel will petition the Court for an award of attorneys' fees from any settlement or judgment.

   3. I hereby designate Sommers Schwartz, P.C. and Dorcey Law Firm, PLC law firms to represent me in this lawsuit.

Hunt Consent to Join. That's it. The Opt-In Plaintiffs thus tell us *where* they worked, *whom* they've retained as counsel, and *how* the Opt-In Plaintiffs and counsel will be compensated if they prevail. But they *don't* tell us whether the Opt-In Plaintiffs are "similarly situated" to Johnson. And they do nothing to satisfy the five-step inquiry courts in our District apply in these cases: They *never* say that they share the same "job title" ("agent" versus something else) or "geographic location" with the Plaintiff, that the "time period" of the "alleged violations" was the same, that they were subjected to the same "policies and practices" as the Plaintiff, or that the "actions which constitute violations" were the same. *See Vertilus*, 2019 WL 4753622, at *2. We thus cannot say that the Opt-In Plaintiffs are "similarly

---

a lot of time at night on e-mails,' but that belief by itself carries no evidentiary weight," and concluding that the plaintiff's "belief addressing the duties of the six or eight sales representatives in his division would be of limited utility for justifying nationwide certification"); *Boyd v. Alutiiq Global Sols., LLC*, 2011 WL 3511085, at *6 (N.D. Ill. Aug. 8, 2011) ("[D]eclarations filed in support of a motion for conditional certification must be based on personal knowledge.").

11

situated" to Johnson (or to each other). *See Rife v. Fronton Holdings, LLC*, 219 F. Supp. 3d 1256, 1262 (S.D. Fla. 2016) (Lenard, J.) ("In fact, the opt-ins fail to describe any of their job requirements, so it is impossible for the Court to determine whether they are similarly situated to [the] Plaintiff."); *see also Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004) (Thompson, J.) ("[P]laintiffs must introduce more than their own statements that other potential class members exist.").

As we've explained in a similar case, "the Plaintiff's conclusory assertion that other individuals *may* have been aggrieved by the Defendants' conduct—and that these other individuals, whoever they are, *may* one day wish to join this lawsuit—does not come close to meeting the standard for conditional class certification." *Vertilus*, 2019 WL 4753622, at *3. Indeed, courts in our Circuit frequently deny collective-class certification in cases like ours—where the only evidence the plaintiff adduces comes from conclusory assertions in her own declaration. *See, e.g.*, *Rodgers v. CVS Pharm., Inc.*, 2006 WL 752831, at *16-21 (M.D. Fla. Mar. 22, 2006) (Whittemore, J.) (denying conditional class certification because the plaintiff—and two employees who signed consents to join—failed to identify other employees who wanted to opt into the lawsuit); *Blake*, 197 F. Supp. at 1375 (denying conditional class certification where the plaintiff "provide[d] only one declaration other than his own" and reasoning that "the complete lack of information as to [the plaintiff's] other proposed opt-in, Leisha Rosario, utterly fails to satisfy even the lenient standard suggested in *Hipp*"); *Rife*, 219 F. Supp. 3d at 1262 (finding that the plaintiff "failed to satisfy his burden of showing a 'reasonable basis' for his claim that there are other similarly situated employees" where "the opt-ins' Declarations are vague and entirely unhelpful with respect to job requirements" and "the opt-ins fail to describe any of their job requirements," making it "impossible for the Court to determine whether they are similarly situated to [p]laintiff"); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1278 (M.D. Ala. 2004) (Thompson, J.) (denying conditional class certification where the plaintiffs sought "approval of class

12

notice without calling the court's attention to any evidence of the ways in which their and the proposed class members' jobs are similar"); *Spradlin v. Key Installation Servs., Inc.*, 2023 WL 11708679, at *6 (M.D. Fla. Oct. 4, 2023) (Howard, J.) (denying collective class certification where there were only "two opt-in plaintiffs" and where, as to one of those opt-ins, the plaintiff "was unable to obtain his signed declaration or provide accurate employment details").

***

After careful review, therefore, we **ORDER and ADJUDGE** that the Plaintiff's Motion for Class Certification [ECF No. 49] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on February 12, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record